IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
LUFKIN DIVISION

| | |
|---|---|
| SARAH ANNE HAPNEY, § | |
| § | |
| **Plaintiff,** § | |
| § | |
| v. § | CIVIL ACTION NO. 9:21-CV-76-MAC |
| § | |
| COMMISSIONER OF SOCIAL § | |
| SECURITY § | |
| § | |
| **Defendant.** § | |

## REPORT AND RECOMMENDATION OF
## UNITED STATES MAGISTRATE JUDGE

The Plaintiff, Sarah Anne Hapney ("Hapney"), requests judicial review of a final decision of the Commissioner of Social Security Administration with respect to her application for disability-based benefits. This action is before the undersigned magistrate judge for review, hearing if necessary, and submission of a report with recommended findings of fact and conclusions of law.[1] The undersigned finds that the administrative law judge's decision lacks reversible error and is supported by substantial evidence, and therefore recommends affirming the decision denying benefits.

### I. JUDICIAL REVIEW

United States district courts may review decisions of the Commissioner of the Social Security Administration. 42 U.S.C. § 405(g) (2020). The scope of judicial review is limited, however, to determining whether (a) the Commissioner applied proper legal standards and (b) the decision is supported by substantial evidence. *See Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir.

---

[1] General Order 05-06 refers civil proceedings involving appeals from decisions of the Commissioner of Social Security Administration to magistrate judges serving the divisions where the cases are filed. *See also* 28 U.S.C. § 636(b)(1)(B) (2009) and E.D. TEX. CIV. R. CV-72 for the Assignment of Duties to United States Magistrate Judges.

1

1995); *Anthony v. Sullivan*, 954 F.2d 289, 292 (5th Cir. 1992). When the Commissioner applies proper law and the decision is supported by substantial evidence, the Commissioner's findings are conclusive and must be affirmed. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *see also* 42 U.S.C. § 405(g).

Reviewing courts, therefore, give the Commissioner's decisions great deference. *Leggett*, 67 F.3d at 564. Courts may not re-weigh evidence, try issues *de novo*, or substitute their judgments for those of the Commissioner. *Bowling v. Shalala*, 36 F.3d 431, 434 (5th Cir. 1995). A court cannot reverse the Commissioner simply because the court might have decided the case differently in the first instance. *Elfer v. Texas Workforce Comm'n*, 169 F. App'x 378, 380 (5th Cir. 2006); *Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir. 1995) (stating that the court may not "substitute [its] judgment for that of the Secretary"). Rather, it is for the Commissioner to weigh evidence and resolve conflicts. *See Anthony*, 954 F.2d at 295; *Selders v. Sullivan*, 914 F.2d 614, 617 (5th Cir. 1990).

When the Commissioner fails to apply correct principles of law, or when "substantial evidence"[2] does not support the Commissioner's decision, the governing statute authorizes a reviewing court to enter, upon the pleadings and the transcript of the record, a judgment modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing. *See* 42 U.S.C. § 405(g). Thus, courts have power to remand for further administrative proceedings, or they may direct the Commissioner to award benefits without a rehearing. Ordinarily, courts remand for further administrative proceedings to address and cure

---

[2] "Substantial evidence" is a term of art meaning "more than a mere scintilla." *Biestek v. Berryhill,* 139 S. Ct. 1148, 1154, 203 L. Ed. 2d 504 (2019) (citing *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Anthony v. Sullivan*, 954 F.2d at 292. Evidence is "substantial" when it is relevant and sufficient for a reasonable mind to accept as adequate to support a conclusion. *Biestek,* 139 S. Ct. at 1154*; Richardson v. Perales*, 402 U.S. at 401; *Marcello v. Bowen*, 803 F.2d 851, 853 (5th Cir. 1986).

2

deficiencies.  *See, e.g., Newton v. Apfel*, 209 F.3d 448, 460 (5th Cir. 2000).

## II.   BACKGROUND

### A.   Procedural History

Hapney applied for disability insurance benefits on March 28, 2019, due to impairments that allegedly became disabling on January 15, 2019.  (Tr. 18, 192-195.)  Following the denial of her claim, she requested a hearing before an administrative law judge which was held on November 12, 2020.  (Tr. 44-58.)  After that hearing, on November 27, 2020, Administrative Law Judge David R. Gutierrez ("ALJ Gutierrez") denied Hapney's request for benefits.  (Tr. 18-29.)  Hapney requested review of the ALJ's decision by the Appeals Council, which was denied on February 10, 2021, resulting in this appeal.  (Tr. 4-6.)

### B.   Factual History

Hapney was 40 years old on the date last insured with a limited education and past work experience as a laborer driving a pallet jack.  (Tr. 28.)

### C.   Administrative Decision and Appeal

ALJ Gutierrez utilized the five-step sequential analysis model specified by regulations and approved by courts in reaching his decision denying Hapney's application.[3]  At step one, ALJ

---

[3] Pursuant to 20 C.F.R. § 404.1520(a)-(f), the five steps are generally as follows:
  1. The Commissioner ascertains *whether an applicant currently engages in substantial gainful activity*. (If so, a finding of non-disability is entered, and the inquiry ends.)
  2. The Commissioner determines *whether an applicant has a severe impairment or combination of impairments.* (If not, the inquiry ends, and a finding of non-disability is entered.)
  3. The Commissioner determines *whether any severe impairment(s) equals or exceeds those in a Listing of Impairments, 20 C.F.R. Subpt. P, Appendix 1* ("the Listings").  (If so, disability is presumed, and benefits are awarded.  If not, the analysis continues.)
  4. The Commissioner determines *whether any impairment(s) prevents the claimant from engaging in regular previous employment*.  (If so, a *prima facie* case of disability is established and the burden of going forward (to the fifth step) shifts to the Commissioner.  *See Chaparro v. Bowen*, 815 F.2d 1008, 1010 (5th Cir. 1987)).
  5. The Commissioner determines *whether other work exists in the national economy which the applicant can perform*.  (If so, the burden shifts back to the applicant to show he cannot perform the alternative labor.  *See id.*; *Taylor v. Bowen*, 782 F.2d 1294, 1298 (5th Cir. 1986)).

Gutierrez found that Hapney has not engaged in substantial gainful activity since her alleged onset date of January 15, 2019. (Tr. 20.) At step two, he found that Hapney has the following severe impairments: disorder of the back, fibromyalgia, diabetes with neuropathy, obesity, bipolar disorder, depression, anxiety disorder, and post-traumatic stress disorder. (Tr. 21-23.) At step three, ALJ Gutierrez found that these impairments do not meet or medically qualify under the criteria of any listed impairment in the regulations at 20 C.F.R. pt. 404, subpt. P, app 1 (Listed Impairments) for presumptive disability. (Tr. 23-24.)

At step four, ALJ Gutierrez determined that Hapney retained the physical residual functional capacity (RFC) to perform the following work: lift, carry, push, or pull twenty pounds occasionally and ten pounds frequently; stand/walk/sit up to six hours in an eight-hour workday with normal breaks; no climbing ropes, ladders, or scaffolds; occasionally climb ramps and stairs; no crawling; occasionally balance, stoop, kneel, or crouch; no unprotected heights, open flames, or dangerous machinery; only frequent gross handling and fine fingering bilaterally; and only indoor work. Mentally, Hapney retained the ability to perform the following: simple work, including one, two, or three step tasks performed at a non-forced or non-assembly line pace without a production rate pace; no tandem or teamwork; and only occasional contact with coworkers, supervisors, and the public. (Tr. 24-27.) Ultimately, ALJ Gutierrez found Hapney was not able to perform past relevant work at step four. (Tr. 27-28.) At step five, ALJ Gutierrez, relying on vocational expert ("VE") testimony, found that Hapney was not disabled because she was able to perform other work that existed in significant numbers in the national economy, such as the light, unskilled jobs of garment sorter, mail sorter, and laundry sorter. (Tr. 28-29.) In addition, the VE found that Hapney could perform unskilled, sedentary jobs, including document specialist, bench hand worker, and addresser. (*Id.*)

### III.  POINTS OF ERROR

Hapney argues that ALJ Gutierrez failed to property consider the severity of her gastro-intestinal impairments at step two. Further, she alleges that the mental RFC determination lacks the support of substantial evidence, because ALJ Gutierrez failed to properly weigh the opinions of Dr. David McLendon, Ph.D., the psychological consultative examiner.

The Defendant responds that all of Hapney's impairments (severe and non-severe) were considered by ALJ Gutierrez in assessing her RFC, and he also properly considered and discounted the medical opinions regarding Hapney's mental RFC.

### IV.  DISCUSSION AND ANALYSIS

A.  Step Two – Severity of Impairments

At step two of the evaluation process, the ALJ determines whether an applicant has a *severe* impairment or combination of impairments. 20 C.F.R. § 404.1520 (2012). In *Stone v. Heckler*, 752 F.2d 1099, 1101 (5th Cir. 1985), the Fifth Circuit considered the standard of "severity" and established that "[a]n impairment can be considered as not severe only if it is a slight abnormality [having] such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education or work experience." Recently, in *Keel v. Saul*, 986 F.3d 551, 557 (5th Cir. 2021), the Fifth Circuit resolved a split among the district courts in the Fifth Circuit and concluded that Social Security Ruling (SSR) 85-28, while not using the identical language of *Stone*, comports with the *Stone* severity standard. As the Fifth Circuit stated in *Keel*, SSR 85-28 provides that "'[a]n impairment or combination of impairments' is 'not severe' if 'medical evidence establishes only a slight abnormality or a combination of slight abnormalities which would have no more than a minimal effect on an individual's ability to work even if the individual's age, education, or work experience were specifically considered.'" S.S.R.

85-28, 1985 WL 56856, at *3 (1985). The Fifth Circuit concluded in *Keel* that SSR 85-28 uses language "similar" to *Stone*, and that "[t]hough the precise wording differs, *Stone* and SSR 85-28 are not substantially different enough to warrant a finding of error" where an ALJ applies the SSR 85-28 standard. *Keel*, 986 F.3d at 556-557.

ALJ Gutierrez found Hapney has severe impairments, including: disorder of the back; fibromyalgia, diabetes with neuropathy; obesity; bipolar disorder; depression; anxiety disorder; and post-traumatic stress disorder (PTSD). (Tr. 21-23.) However, he found that her irritable bowel syndrome (IBS), diverticulitis, and gastroesophageal reflux disease (GERD) were not severe. Hapney argues that ALJ Gutierrez failed to properly consider the severity of her gastro-intestinal impairments at step two.

In making his step two determination, ALJ Gutierrez references SSR 85-28 and uses the correct standard. (Tr. 21-22.) He addressed Hapney's complaints, discussed her colonoscopy, the consultative exam with Dr. Richard Baker, and noted her medical records for these conditions with Dr. Raghuveer Reddy. (*Id.*) He pointed out that her symptoms were episodic and intermittent, and medication helped. (*Id.*) He determined that these impairments were not severe and also found that her gastrointestinal issues did not meet the duration requirement of lasting for a *continuous* period of not less than twelve months. *See Ware v. Kijakazi*, No. CV H-20-1275, 2022 WL 347618, at *4 (S.D. Tex. Jan. 19, 2022), *R. & R. adopted*, 2022 WL 345649 (S.D. Tex. Feb. 3, 2022) (citing 20 C.F.R. § 1520(a)(4)(ii) (2017)) ("The ALJ must consider at step two whether the claimant has a severe medically determinable impairment that meets the duration requirement."). In addition, the state agency medical consultants, Dr. George Carrion and Dr. Nancy Childs, both found these impairments were not severe. Accordingly, the court finds that ALJ Gutierrez properly considered Hapney's gastro-intestinal impairments and his findings are

supported by substantial evidence.

Moreover, even if there were error in finding these impairments non-severe, ALJ Gutierrez considered them in his RFC analysis. *See Reliford v. Colvin,* No. H–12–1850, 2013 WL 1787650, at *13 (S.D. Tex. April 25, 2013) ("even if the ALJ's failure to make a specific severity finding with regard to foot pain was an error, it was harmless because he considered related limitations at subsequent steps of the disability analysis"). He noted Hapney's consultative exam with Dr. Baker and found it somewhat persuasive. (Tr. 27.) Dr. Baker considered Hapney's IBS (with constipation and diarrhea) and did not assess any functional limitations for that condition finding that she had no difficulty standing, sitting, or moving about; could lift and carry 10-15 pounds; handle objects; speak normally; normal gait; no squatting or hopping; and grip strength normal. (Tr. 333.) ALJ Gutierrez only disagreed with his opinion as to her ability to lift increasing that to occasionally lifting up to twenty pounds and added in manipulative restrictions. (Tr. 27.) In addition, ALJ Gutierrez also considered the SAMC's opinions. Although he did not find them persuasive, it was because he found that Hapney had additional limitations to her favor. His opinion that Hapney's IBS and diverticulitis were non-severe coincides with that of the SAMCs, which also found these impairments were non-severe. (Tr. 27, 74, 85.) Accordingly, the court finds no reversable error at step two.

    B.  <u>Mental Residual Functional Capacity ("RFC")</u>

The regulations state that RFC means "the most you can still do despite your limitations." 20 C.F.R. § 416.945 (2012). Thus, when making an RFC determination, the ALJ decides whether an applicant retains the physical and mental abilities necessary to perform activities generally required by competitive, remunerative work. *See id.*; SSR 96-8p, 1996 WL 374184 (July 2, 1996). The RFC involves three components: physical abilities, mental abilities, and other abilities

7

affected by impairments.   20 C.F.R. § 416.945(b)-(d).

A person's RFC is assessed at steps four and five of the sequential evaluation process.  At that point, the person has demonstrated an impairment of a magnitude sufficient to significantly limit the ability to do basic work activities (step two), but not so severe as to match listed impairments (step three) from which disability is presumed.  Thus, the Commissioner must determine whether, despite the presence of severe impairments, the person retains functional capacity to perform past relevant work (step four), and, if not, any available alternative work (step five).  SSR 96-8p, 1996 WL 374184 (July 2, 1996).  An ALJ's assessment of a person's RFC forms the basis of a hypothetical question to which a vocational expert may respond with an opinion as to whether there is alternative available work that a person with the applicant's impairments and functional limitations can perform.  *See Frazier v. Colvin*, No. A-11-CA-901-SS, 2013 WL 12393909, at *5 (W.D. Tex. Aug. 30, 2013).

In assessing an applicant's physical, mental, and sensory abilities, the regulation directs an ALJ to consider the claimant's exertional and non-exertional capacity.  Exertional capacity addresses an individual's limitations and restrictions of physical strength and defines the individual's remaining abilities to perform each of seven strength demands: sitting, standing, walking, lifting, carrying, pushing, and pulling.  SSR 96-8p, 1996 WL 374184 (July 2, 1996).  Non-exertional capacity considers all work-related limitations and restrictions that do not depend on an individual's physical strength, *i.e.*, all physical limitations and restrictions that are not reflected in the seven strength demands, and mental limitations and restrictions, including an individual's abilities to perform physical activities such as postural (*e.g.*, stooping, climbing), manipulative (*e.g.*, reaching, handling), visual (seeing), communicative (hearing, speaking), and mental (*e.g.*, understanding and remembering instructions and responding appropriately to

supervision). *Id.* In addition to these activities, the ability to tolerate various environmental factors (*e.g.*, tolerance of temperature extremes) is also a non-exertional capacity consideration. *Id.*

In the present action, the ALJ concluded that Hapney can perform sedentary work, including: standing/walking two hours in an eight-hour workday; sitting at least six hours in an eight-hour workday; lifting/carrying ten pounds occasionally and about five pounds frequently; no climbing of ropes, ladders or scaffolds; and no work in an environment with heavy industrial vibrations. (Tr. 544-548.) Mentally, he found that Hapney retained the ability to perform the following: simple work, including one, two, or three step tasks performed at a non-forced or non-assembly line pace without a production rate pace; no tandem or teamwork; and only occasional contact with coworkers, supervisors, and the public. (Tr. 24-27.)

Hapney argues that the ALJ's RFC finding is unsupported by substantial evidence because it conflicts with portions of Dr. Clark's consultative medical exam report regarding her mental functionality. (Doc. #13.)

### 1. *Evaluation of Medical Opinions*

The Social Security Administration promulgated a new rule regarding residual functional capacity determinations to govern all claims filed on or after March 27, 2017. *See* 20 C.F.R. § 404.1520c (2017). Hapney applied for disability insurance benefits on March 28, 2019. (Tr. 18.) Therefore, the new rule applies. This rule addresses how the ALJ is to consider and evaluate medical opinions and prior administrative medical filings in evaluating a claimant's residual functional capacity and eliminated the longstanding "treating-physician rule," which required the ALJ to give a treating physician's opinion "controlling weight" in the absence of certain other

9

specific findings. *See* 20 C.F.R. § 404.1527(c)(2) (describing the former "treating physician" rule).

The new rule states that the ALJ is no longer required to defer or give any specific evidentiary weight, including controlling weight, to any medical opinion or prior administrative medical finding. *Id.* at § 404.1520c(a). Instead, the ALJ is to consider all medical opinions and prior administrative medical findings using the same specific factors outlined in the rule, the most important of which are supportability and consistency. *Id.* at § 404.1520c(b)(2). The other factors are treatment relationship with the claimant, specialization, and other factors, such as familiarity with other evidence in the claim. *Id.* at § 404.1520c(c). The ALJ must articulate how persuasive he finds each of the opinions in the record and explain the consideration of the supportability and consistency factors. *Id.* at § 404.1520c(b)(2). The ALJ may, but is not required to, articulate the consideration of the other factors, unless the Commissioner finds that "two or more medical opinions or prior administrative medical findings about the same issue are both equally well-supported . . . and consistent with the record . . . but are not exactly the same." *Id.* at § 404.1520c(b)(3). In those cases, the ALJ must articulate the consideration of the other factors.

Hapney argues that ALJ Gutierrez erred in finding the consultative psychological opinion of Dr. David McLendon, Ph.D. unpersuasive leaving the mental RFC determination without the support of substantial evidence. ALJ Gutierrez considered this opinion, as well as the opinions of the psychological SAMCs—Dr. Mischca Scales, Ph. D. and Dr. Robert B. White, Ph. D. (Tr. 26-27.) He discussed each opinion in detail regarding its supportability and consistency with the record and decided how persuasive the opinion was in reaching his RFC assessment. (*Id.*)

On August 7, 2019, Dr. David McLendon, Ph. D., consultative medical examiner,

10

examined Hapney for her mental impairments. (Tr. 325-329.) He did not review any medical records. Hapney reported feeling numb but not sad and has manic episodes, including anger with anxiety and panic attacks. (Tr. 326.) She stated that she seeks current treatment at a clinic in Nacogdoches, as well as the Burke Center, and receives medications for these impairments. (*Id.*) Hapney, however, also reported that she is currently on probation "for letting somebody sell my pills." (Tr. 327.) Her history indicated a rough childhood including her father being murdered, experiencing molestation from a family member, and becoming pregnant at fifteen years old. (*Id.*) Dr. McLendon diagnosed her with anxiety, bipolar disorder, and PTSD. (Tr. 328-329.) He opined that she has: the ability to understand, carry out, and remember instructions for one-two step instructions but not complex instructions; substantial limitations with regard to her ability to sustain concentration and persist in work-related activity at a reasonable pace; poor and inconsistent ability to maintain social interaction with supervisors, co-workers, and the public; and no ability to deal with normal pressures in a competitive work setting. (Tr. 329.)

ALJ Gutierrez found Dr. McLendon's opinion lacked specific support citing to his exam notes that she had intact concentration with good cognitive function, was cooperative with good behavior, and had some normal activities of daily living such as driving, attending church, and taking care of her grandmother. (Tr. 27.) As to consistency, ALJ Gutierrez noted her lack of mental health treatment. (*Id.*) Despite Hapney's statement to Dr. McLendon that she was currently receiving treatment, ALJ Gutierrez noted that Hapney did not seek treatment from a qualified mental health professional at any time relevant to his decision. (Tr. 26.) The transcript, likewise, does not contain any treating mental health records. [4] Consequently, ALJ Gutierrez did

---

[4] Hapney asserts that she did not have the financial resources to pay for all of the care that she required. However, the record shows that she did not avail herself of alternative resources, such as Medicaid or the Burke Center (which has a charity care policy). (Tr. 331.)

11

not find this opinion persuasive. Despite this finding, he still assessed mental functional limitations in the RFC taking Dr. McLendon's assessment into consideration by assigning Hapney to only one, two, or three step tasks at a non-forced pace with no tandem or teamwork and only occasional contact with coworkers, supervisors, and the public. (Tr. 24.)

On September 5, 2019, Dr. Mischca Scales, Ph. D., state agency medical consultant, reviewed Hapney's medical records (including Dr. McLendon's CE report) and gave an opinion on her mental impairments and functionality. (Tr. 75-76.) Dr. Scales evaluated Hapney's depression and anxiety and determined that these impairments were not severe. (Tr. 76.) The paragraph B criteria evaluation indicated no limitations as to understanding, remembering, or applying information and mild limitations with regard to interacting with others, concentrating, persistence, maintaining pace, and adapting/managing oneself. (Tr. 75.) On February 5, 2020, Dr. Robert B. White, Ph. D., state agency medical consultant, reconsidered Hapney's records and agreed with Dr. Scales in her assessment finding only mild limitations in the same three areas with no severe mental impairments. (Tr. 85-86.)

ALJ Gutierrez evaluated Dr. Scales' and Dr. White's opinions finding them not persuasive in Hapney's favor because they both found her mental impairments non-severe. (Tr. 27-28.) He noted that their opinions were inconsistent with Dr. McLendon's report in that regard. (Tr. 28.)

Hapney also argues that ALJ Gutierrez's rejection of Dr. McLendon's and the SAMCs' opinions leaves his RFC unsupported resulting in a *Ripley* error. In *Ripley*, there was no medical source statement describing the functional limitations or types of work that the applicant was still capable of performing despite his back impairment. *Ripley*, 67 F.3d at 557. The Fifth Circuit found that the ALJ's RFC determination was therefore not supported by substantial evidence, so the court remanded the case with instructions to the ALJ to obtain a report from a treating

physician. *Id.* at 557–58; *see also Sendejas v. Berryhill*, No. 3:16-CV-1636-BF, 2017 WL 1649898, at *4 (N.D. Tex. May 1, 2017) ("Because the ALJ may not make a RFC determination where there is no medical opinion addressing the effects of Plaintiff's mental impairment on her ability to perform work-related activities, the ALJ's decision is not supported by substantial evidence."); *Tyler v. Colvin*, No. 3:15-CV-3917-D, 2016 WL 7386207 (N.D. Tex. Dec. 20, 2016) (finding that an ALJ impermissibly relied on his own medical opinion to develop his RFC determination); *Geason v. Colvin*, No. 3:14-CV-1353-N, 2015 WL 5013877, at *5 (N.D. Tex. July 20, 2015) ("Because the ALJ erred in making an RFC determination without medical evidence addressing the effect of Plaintiff's impairment on her ability to work, the ALJ's decision is not supported by substantial evidence.").

This case is distinguishable from those cited above. There are three medical opinions regarding Hapney's mental impairments. The SAMCs found no severe mental impairments based upon a lack of support in the record since there were no treating medical records during the disability period. However, ALJ Gutierrez found Dr. McLendon's evaluation strong enough to assess Hapney's mental impairments as severe under the *de minimis* standard for step two, and although he did not agree with Dr. McLendon's more restrictive limitations, he still gave functional limitations in the same areas in making his RFC assessment. Given the differing conclusions by these three doctors, ALJ Gutierrez took the findings into consideration and incorporated some of them but did not fully adopt them.

It was within ALJ Gutierrez's discretion to determine the credibility of the various medical reports in the record. *Griego v. Sullivan*, 940 F.2d 942, 945 (5th Cir. 1991). It is also ALJ Gutierrez's job to craft the RFC based on all the relevant medical and other evidence. 20 C.F.R. §§ 404.1545, 404.1546; *Taylor v. Astrue*, 706 F.3d 600, 602-03 (5th Cir. 2012). The RFC is an

13

administrative finding of fact, and the ALJ, not a medical source, is responsible for this assessment. *Taylor*, 706 F.3d at 602-03 (ALJ has the "sole responsibility" to assess the RFC and what the claimant "characterizes as the ALJ substituting his opinion is actually the ALJ properly interpreting the medical evidence to determine his capacity for work"). ALJ Gutierrez evaluated the record as a whole and rendered a decision that reconciles conflicting medical evidence.

The social security regulations explain that the ALJ is the fact-finder in making the RFC assessment, and the ALJ is not required to adopt the RFC verbatim from a medical opinion, as this would nullify his role as fact-finder. *Webster v. Kijakazi*, 19 F.4th 715, 719 (5th Cir. 2021) ("Though the ALJ neither adopted the state agency report verbatim nor accepted the testimony of Dr. Small, it cannot be said that his decision was not based on substantial evidence or that he improperly applied the relevant legal standards."); *Pete v. Comm'r Soc. Sec. Admin.*, No. 6:18-CV-01239, 2020 WL 1492727, at *6 (W.D. La. Feb. 24, 2020), *R. & R. adopted*, 2020 WL 1492705 (W.D. La. Mar. 23, 2020) (citing *Fontenot v. Colvin*, 661 F. App'x 274, 277 (5th Cir. 2016)). "[T]he ALJ is entitled to determine the credibility of medical experts as well as lay witnesses and to weigh their opinions and testimony accordingly." *Moore v. Sullivan*, 919 F.2d 901, 905 (5th Cir. 1990).

The court in *Grennan*, also addressed this same issue and explained that "the law only requires an 'accurate and logical bridge' within the ALJ's RFC explanation." *Grennan v. Comm'r of Soc. Sec.*, No. 4:21-CV-00645-O-BP, 2022 WL 2056277, at *3 (N.D. Tex. May 23, 2022), *R. & R. adopted*, 2022 WL 2053168 (N.D. Tex. June 7, 2022) (citing *Price v. Astrue*, 401 F. App'x 985, 986 (5th Cir. 2010)). Further the court noted that "word-for-word recitations are not required so long as the explanation permits meaningful judicial review." *Id.*; *see also Hernandez v. Astrue*, 278 F. App'x 333, 338 (5th Cir. 2008) (requiring the ALJ to incorporate only those limitations she

finds "consistent with the weight of the evidence as a whole").

The ALJ's explanation here provides such an "accurate and logical bridge" between the evidence considered and the conclusions reached. In conclusion, the ALJ properly considered the medical opinions, and his RFC determination was properly based upon the medical evidence in the record, so his RFC determination is supported by substantial evidence.

## V. RECOMMENDATION

ALJ Gutierrez's application of the sequential analysis is free from legal error and supported by substantial evidence for the reasons discussed in the preceding sections. Consequently, the administrative decision should be affirmed.

## VI. OBJECTIONS

Pursuant to 28 U.S.C. § 636(b)(1)(c), each party to this action has the right to file objections to this report and recommendation. Objections to this report must: (1) be in writing, (2) specifically identify those findings or recommendations to which the party objects, and (3) be served and filed within fourteen (14) days after being served with a copy of this report. *See* 28 U.S.C. § 636(b)(1)(c) (2009); FED. R. CIV. P. 72(b)(2). A party who objects to this report is entitled to a *de novo* determination by the United States district judge of those proposed findings and recommendations to which a specific objection is timely made. *See* 28 U.S.C. § 636(b)(1) (2009); FED R. CIV. P. 72(b)(3).

A party's failure to file specific, written objections to the proposed findings of fact and conclusions of law contained in this report, within fourteen (14) days of being served with a copy of this report, bars that party from: (1) entitlement to de novo review by the United States district judge of the findings of fact and conclusions of law, *see Rodriguez v. Bowen*, 857 F.2d 275, 276–77 (5th Cir. 1988), and (2) appellate review, except on grounds of plain error, of any such findings

of fact and conclusions of law accepted by the United States district judge, *see Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, at 1428–29 (5th Cir. 1996) (en banc).

**SIGNED this the 2nd day of February, 2023.**

_____
Christine L Stetson
UNITED STATES MAGISTRATE JUDGE